**Jerry Lee ASHBY, Petitioner,**

v.

**J. D. COX, Superintendent, Virginia State Penitentiary (now A. E. Slayton), Respondent.**

**Civ. A. No. 71–C–55–A.**

United States District Court, W. D. Virginia, Abingdon Division.

June 2, 1972.

Jerry Lee Ashby, pro se.

James E. Kulp, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION

WIDENER, Chief Judge.

On December 3, 1969, in the Circuit Court of Washington County, petitioner pleaded guilty to a two-count indictment charging him with statutory burglary and grand larceny. Petitioner was sentenced to two years' imprisonment on each count.

He now petitions this court for relief from his sentence by way of habeas corpus pursuant to the provisions of 28 U. S.C. § 2241. He asserts twenty grounds for relief, which are set forth in his petition as follows:

"The Court erred:

1. Upon the arrest of the defendant, Jerry Lee Ashby, the officers searched his person illegally and in violation of his constitutional right under the United States constitution and the law of this state; that at the time of defendant's arrest the officers had neither an arrest warrant nor a search warrant; and that the articles, allegedly obtained by means of illegal search, were used as evidence against the defendant in the trial of the case, all in violation of the Fourth, Fifth and fourteenth amendments of the constitution of the United States.

2. That the defendant was not given the benefit of Miranda Warnings until after his arrest and the search of his person.

3. That the defendant, Jerry Lee Ashby, upon the trial of this case, and prior to sentencing, was guestioned [sic] by the court, in violation of his rights to the Miranda Warnings, and especially without warning that he had the right to remain silent.

4. The second count of the indictment, charging grand larceny, is fatally defective, and is a blanket indictment, and violates the defendant's constitutional rights to a fair trial in that the second count of the indictment states a conclusion and does not specify the articles which the defendant, allegedly stole nor the value of the items.

5. The Court erred in finding the defendant, Jerry Lee Ashby guilty of grand larceny.

6. The court erred in overruling the defendant's two *MOTIONS* filed herein on the 2nd day of December, 1969, over the defendant's objection and exceptions, as will be shown by the stenographic record which, even though demanded, has not been provided by the Court.

7. The Courter [sic] erred in not sustaining defendant's *DEMURRER AND MOTION TO QUASH FIRT* [sic] *COUNT OF THE INDICMENT* [sic] filed herein on the 28th day of November, 1969.

8. It was error to overrule the defendant's *MOTION FOR PSYCHITRIC* [sic] *EXAMINATION* filed herein on the 28th day of November, 1969.

9. The Court erred in overruling defendant's *DEMURRER AND MOTION TO QUASH SECOND COUNT OF THE INDICTMENT CHARGING GRAND LARCENY* and the five motions therein contained, filed herein on the 28th day of November, 1969, over defendant's objection and exceptions.

10. The Court erred in overruling defendant's *DEMURRER AND MOTION TO QUASH FIRST AND SECOND COUNTS OF THE INDICTMENT*, filed herein on the 28th day of November, 1969, over defendant's objection and exceptions.

11. Defendant was denied a transcript of that part of the record referred to in the order of this court entered on December 1, 1969, to wit;

The defendant, by counsel, made certain oral motions upon which the court ruled and will appear fully in the stenographic record made herein.

12. The Court erred in depriving the defendant, Jerry Lee Ashby, of his right

to effective counsel as will appear from his motion and exception filed herein on December 2, 1969.

13. The defendant says that he did not voluntarily and understandingly enter a plea of guilty herein, and says that he by his plea, did not waive any of his motions, objections and exceptions to the erroneous rulings of the Court theretofore made in that, on being guestioned [sic] by the Court, he was never asked if he had any objections to the actions of the Court theretofore taken, and for other reasons appearing in the record.

14. That after being sentenced by the court on the first count in the indictment for statutory burglary, the Court's attempted sentencing of the defendant under the second count of the indictment for grand larceny was in violation of the fifth Amendment ban on double jeopardy as made binding on the states by the fourteenth Amendment, respectively, of the constitution of the United States; the attempted sentencing of the defendant for grand larceny was prohited [sic], and thusly, a nullity, becaude [sic] of constitutional bar against double jeopardy.

15. The Court, prior to sentencing the defendant, called upon him to testify, but did not avise [sic] him of his rights to remain silent.

16. The action of the Court in refusing appinted [sic] counsel time to prepare for the trail [sic] of this case was a denial to this defendant of effective assistance of counsel as required under the Sixth Amendment of the constitution of the United States.

17. The action of the Court in denying appointed counsel the right to investigte [sic] the defendant's mental condition, thusly to estabish [sic] as complete a defense as possible, denied the defendant the right to effective assistance of counsel as required under the Sixth Amendment of the Constitution of the United States.

18. The defendant, without waiving any of his other Assignments of Error heretofore made, says that the court in sentencing him on on [sic] the second count of the indictment was required to examine the witnesses and determine the degree of the offense charged, if any, according to law and the evidence intorduced [sic] by the Commonwealth; that the evidence adduced by the Commonwealth was insufficient to sustain a conviction of grand larceny, and the court was without original jurisdiction to find as to petty larceny, and the Court should have sustained the defendant's motion to strike the same at the conclusion of the in troduction [sic] thereof as will be shown from reasons assigned in his motion and from the transcripto [sic] of the evidence.

19. That the Court erred in refusing to strike the evidence adduced by the Commonwealth in repect [sic] to the first count of the indictment.

20. That the first and second counts of the indictment are fatally defective in that each count fails to state any offense cognizable in law and attempts to incorporate by reference the [sic] found in the code of Virginia, without specifying what the offense was, all violation of defendant's right to be advised by indictment of the crimes of which he stood charged." [1]

Petitioner filed a petition for a writ of error and supersedeas in the Supreme Court of Virginia, which was denied on January 19, 1971. Although he there filed as assignments of error a copy of the above grounds for relief, he withdrew from consideration by the Supreme Court assignments of error 1, 2, 3, 7, 11, 15, 19, and 20.

Grounds for relief here, numbers, 1, 2, 3, 7, 11, 15, 19, and 20, except for typographical errors, are identical to the assignments of error withdrawn from consideration and numbered the same. Thus, as to those eight grounds, he has

---

1. Most, if not all, of the apostrophes in the petition appear as commas and these have been changed.

not exhausted his state remedies as required by 28 U.S.C. § 2254.

*Denial of a preliminary hearing, failure to obtain a warrant of arrest, and insufficiency of the indictment*

Grounds for relief 4, 9, and a part of 6 deal with the alleged error of the trial court in not quashing the indictment. The motions referred to in 9 and one of the motions referred to in 6 allege that petitioner did not receive a preliminary hearing on the second count of the indictment charging him with grand larceny, that no warrant of arrest was ever issued against him for grand larceny, that the second count of the indictment insufficiently described and only expressed a conclusion as to the value of the property alleged to have been stolen. In White v. Pepersack, 352 F.2d 470, 472 (4th Cir. 1965), the court stated:

"It is a familiar principle that a voluntary plea of guilty does foreclose subsequent collateral attack upon the judgment and the sentence when the attack is based upon an alleged deprivation at some earlier stage of the proceedings."

After a voluntary guilty plea, the only errors in the proceedings prior to the entry of the plea that can be raised in a collateral proceeding such as this are jurisdictional errors. Cradle v. Cox, 327 F.Supp. 1169, 1175 (E.D.Va.1971). Although Ashby has alleged that his plea was not voluntary, as will be discussed below, this claim is not well taken.

Consideration of petitioner's claim that he was denied a preliminary hearing on count two of the indictment is foreclosed by his voluntary guilty plea. Emmett v. Balkcom, 358 F.2d 302 (5th Cir. 1966); United States v. Karger,

439 F.2d 1108, 1109–1110 (1st Cir. 1971), cert. den. 403 U.S. 919, 91 S.Ct. 2230, 29 L.Ed.2d 696 (1971). The preliminary hearing granted by § 19.1–163.-1 of the Code of Virginia (1960 Repl. Vol.) is not jurisdictional. Mapson v. Cox, 313 F.Supp. 465, 467 (W.D.Va. 1970); Bird v. Peyton, 287 F.Supp. 860, 862–863 (W.D.Va.1968); Webb v. Commonwealth, 204 Va. 24, 31, 129 S.E.2d 22, 27–28 (1963). And, in any event, there is no constitutional right to a preliminary hearing. United States v. Karger, supra; *Bird,* supra; McCormick v. Peyton, 274 F.Supp. 797, 799 (W.D.Va. 1967); *Webb,* supra.

Similarly, Ashby's voluntary guilty plea precludes consideration of his claim that no warrant of arrest was ever issued against him for grand larceny, Williams v. Smith, 434 F.2d 592, 595 (5th Cir. 1970); Connors v. United States, 325 F.Supp. 596, 597 (W.D.Va. 1971); Quillien v. Leeke, 303 F.Supp. 698, 705 (D.S.C.1969), although there is no requirement that a warrant of arrest be issued where the grand jury first returns an indictment against the accused. Waller v. Commonwealth, 84 Va. 492, 494–495, 5 S.E. 364, 365–366 (1888).

Petitioner also claims that count two of the indictment was fatally defective because it did not contain a list of the articles stolen and only expressed a conclusion that the property stolen exceeded $100.00 in value.[2] A voluntary guilty plea waives all objections to the sufficiency of the indictment, other than the objection that the indictment charges no offense. Hopkins v. United States, 344 F.2d 229, 234 (8th Cir. 1965); Alm v. United States, 238 F.2d 604, 605 (8th Cir. 1956), cert. den.

---

**2.** Two of the indictment is as follows: "Second Count—And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present that Jerry Lee Ashby on the 31st day of October in the year of Christ 1969, in the County of Washington aforesaid, and within the jurisdiction of the Court aforesaid in violation of Section 18.1–100 of the Code of Virginia, 1950, and amended, feloniously and unlawfully did take, steal and carry away from Leon Street's Atlantic service station of goods and chattels of the value of one hundred dollars or more with intent to deprive Leon Street's Atlantic Service Station of its ownership therein, against the peace and dignity of the Commonwealth of Virginia."

353 U.S. 939, 77 S.Ct. 818, 1 L.Ed.2d 762 (1957); Camm v. Peyton, 299 F.Supp. 485, 487 (W.D.Va.1969). Inasmuch as Ashby asserts that the indictment was "fatally defective," he will be given the benefit of the doubt, and the court will consider that petitioner claims that the indictment charged no offense or that the alleged defect was jurisdictional.

■ A claim identical to that here made by Ashby was considered by the Fourth Circuit Court of Appeals in Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959). There, the petitioner, having been convicted of grand larceny by the Commonwealth of Virginia, contended:

". . . that the indictment is insufficient and void because the property is merely described as personal property of the value of more than $50 of the goods and chattels of Lloyd G. K. Carr without more particular description or identification of the goods." [3]

*Id.* at 840.

The court concluded that even if the indictment may have been technically insufficient, it sufficiently described the crime of grand larceny and adequately informed the petitioner of the nature and character of the crime with which he was charged. The court held that the failure to particularize the items stolen had not deprived the trial court of jurisdiction nor the petitioner of any constitutional right and that, in any event, the defect could have been cured by a bill of particulars. *Id.* at 840–841. Thus, Ashby's claim that count two of the indictment was fatally defective is not well taken.

### Double Jeopardy

■ The motions referred to in claim 10 raise the same issue as raised in claim 14, namely that the double jeopardy provision of the Constitution prohibits conviction of both grand larceny and statutory burglary. Petitioner was not placed in double jeopardy because he was charged with and admitted guilt to two separate offenses, which were charged in two counts of the indictment. Smith v. Cox, 435 F.2d 453 (4th Cir. 1970), vacated on other grounds, 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971); Clemas v. United States, 423 F. 2d 461 (8th Cir. 1970), cert. den. 398 U. S. 968, 90 S.Ct. 2183, 26 L.Ed.2d 554 (1970); Coleman v. Koloski, 415 F.2d 745 (6th Cir. 1969), cert. den. 397 U.S. 948, 90 S.Ct. 968, 25 L.Ed.2d 129 (1970); Joyce v. Cox, 315 F.Supp. 832 (W.D.Va.1970); Jones v. Commonwealth, 208 Va. 370, 375, 157 S.E.2d 907 (1967); Speers v. Commonwealth, 17 Gratt. (58 Va.) 570 (1867); *cf.* Jones v. Cunningham, 313 F.2d 347, 350 (4th Cir. 1963), cert. den. 375 U.S. 832, 84 S. Ct. 42, 11 L.Ed.2d 63 (1963).

### Finding of guilty and insufficiency of the evidence

■ In claim 5, petitioner asserts that it was error for the court to find him guilty of grand larceny. In claim 18, petitioner alleges that the evidence was insufficient to sustain a conviction of grand larceny. A plea of guilty is itself a conviction, and the court is required to do no more than pass judgment and determine the punishment. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969); Hicks v. Cox, 318 F.Supp. 317 (W.D.Va.1970). In any event, the court heard the testimony of witnesses as to the charges which was sufficient under the circumstances to support a finding of guilt.

### Denial of pre-trial mental examination, denial of a continuance, and denial of effective assistance of counsel

Petitioner asserts in claim 8 that it was error for the court to overrule his motion for a psychiatric examination. In petitioner's 6th and 12th grounds for relief, he alleges that it was error for the court to deny a pre-trial motion to have him examined at the Bristol Mental

---

3. Prior to a 1966 amendment to § 18.1–100 of the Code of Virginia (1960 Repl.Vol.), a person who committed simple larceny not from the person of another of goods of the value of $50.00 (now $100.00) was guilty of grand larceny.

Health Center on December 15, 1969. The motion stated that the request was being made so that the defendant might have effective assistance of counsel. This motion, made on December 1, 1969, of necessity, encompassed a request for a continuance, as Ashby's trial was then scheduled for December 2, 1969. In claim 17 in his present petition, Ashby alleges that he was denied the right to effective assistance of counsel by the court's action in "denying appointed counsel the right to investigate the defendant's mental condition." And in claim 16, petitioner alleges that he was denied effective assistance of counsel by the court's refusal to give his attorney sufficient time to prepare for trial.

Although petitioner does not here allege that he was insane at the time of his trial, a generous reading of his petition may reveal that he contends that the denial of his motions for a pre-trial mental examination rendered his plea involuntary. Consequently, the claims concerning themselves with the denial of the pre-trial examination will be considered on their merits. See Thomas v. Cunningham, 313 F.2d 934, 938 (4th Cir. 1963); United States v. Kendrick, 331 F.2d 110, 111 (4th Cir. 1964).

At the hearing before the trial judge on the motion for a pre-trial psychiatric examination, appointed counsel informed the court that petitioner's natural mother had been syphilitic immediately prior to petitioner's birth. Petitioner's adoptive mother, Mrs. Ashby, testified. She stated that she had raised Ashby, that, as a child, he had run away from home on occasion, and that she had taken him to a psychiatrist when he was a child because he was not learning to read and write. She also testified that about five years prior to the date of the hearing, when petitioner would have been about seventeen years of age, he had severely injured himself during an incident of sexual deviance. Mrs. Ashby expressed the opinion that petitioner did not know right from wrong.

At the hearing, the trial judge and petitioner's attorney made several references to a report from Southwestern State Hospital, which the same judge had ordered previously, in 1965, before petitioner was tried on a charge of grand larceny in Smyth County, Virginia. The report from Southwestern State Hospital is not in the state court record, but a copy has been filed by the Attorney General as the trial judge and the petitioner placed reliance on it in the consideration of petitioner's request.[1] The psychiatrists who examined Ashby in 1965 concluded that he was not psychotic or insane at the time of the examination and that he was aware that stealing was unlawful and wrong. Their diagnosis was "Mental Deficiency, Idiopathic, Moderate." They found petitioner to have an I.Q. of sixty-six. Nevertheless, it was the opinion of the psychiatrists that petitioner was mentally competent, able to stand trial, and able to testify in his behalf if he so desired.

The denial of motion for a pre-trial examination under § 19.1–228 of the Code of Virginia (1960 Repl.Vol.) or the denial of a motion for a continuance in order to effectuate a mental examination cannot be assailed except for a clear abuse of discretion. Hawks v. Peyton, 370 F.2d 123 (4th Cir. 1966), cert. den. 387 U.S. 925, 87 S.Ct. 2044, 18 L.Ed.2d 982 (1967); Thomas, supra, 313 F.2d at 940; Johnson v. Coiner, 308 F.Supp. 1373, 1376 (S.D.W.Va.1970). For the reasons which follow, the court is of opinion that the state court did not clearly abuse its discretion in denying petitioner's requests.

The purpose of a pre-trial examination is to see whether or not the accused is ". . . mentally competent to plead and stand trial . . ." § 19.-1–228 Va.Code Ann. (1960 Repl.Vol.). Petitioner had the burden of creating in the court's mind a "reasonable ground to doubt his sanity." Thomas, supra, 313 F.2d at 940. *At the hearing in the state court, neither petitioner nor his attorney*

---

4. In fact, the trial judge stated that he had previously ordered petitioner examined on more than one occasion and that all those prior reports had indicated that petitioner was competent.

*alleged, and petitioner does not here allege, that petitioner was unable to stand trial, unable to discuss the charges against him with his attorney or otherwise assist in his defense, or unable to understand the charges against him. For that matter, neither did petitioner allege in the state court, nor does he here allege, that he was insane or unable to form the requisite criminal intent at the time the offenses were committed. Other than counsel's statement that he had learned from the Southwestern State Hospital Report that petitioner had a low I.Q. and Mrs. Ashby's statement that she did not believe that petitioner knew right from wrong, all of the evidence presented and representations by petitioner's attorney related to events prior to the 1965 mental examination. The defense attorney at no time advised the court that the defendant was unable to effectively participate in his own defense, or that a mental examination was necessary to determine if he was so able.* His statements to the court were to the effect that he wanted a psychiatrist to assist him in the defense of the accused. The attorney is widely experienced. He qualified to practice in the state courts in 1935, and in this court in 1936. State records show he was the Attorney for the Commonwealth in Washington County from 1948 to 1952. The fact that no such assertions were made to the trial court leaves a strong inference that the attorney could not make them in good faith. Mrs. Ashby's statement that her son did not know right from wrong, taken in context, did not specifically refer to her adopted son's mental condition at the time of the hearing or at the time of the offense [5] and was contradicted by the report from Southwestern State Hospital. At any rate, under the Virginia statute, the question of whether or not he did know right from wrong was not relevant to the question of whether he should have been afforded a pre-trial mental examination, for the statute confines itself to the capability to plead and stand trial. § 19.1–228 Va.Code Ann. (1960 Repl.Vol.); Timmons v. Peyton, 360 F.2d 327, 331 (4th Cir. 1966), cert. den. 385 U.S. 960, 87 S. Ct. 396, 17 L.Ed.2d 305 (1966); United States v. Kendrick, supra, 331 F.2d at 112, n. 1. In the absence of any representations or evidence to the contrary, it was reasonable to assume that petitioner's I.Q. had not lessened during the four-year interval between the hearing and the previous mental examination. Consequently, the state court, having been presented with little relevant evidence as to petitioner's mental condition after 1965, when he was found mentally competent to stand trial, did not clearly abuse its discretion in denying petitioner's requests. See Lovan v. Wingo, 315 F.Supp. 656, 658 (W.D.Ky.1970), aff'd 429 F.2d 1407 (6 Cir. 1970); United States v. Thrower, 394 F.2d 510 (4th Cir. 1968).

Under some circumstances, a defendant may be deprived of effective assistance of counsel when his attorney fails to bring the accused's mental condition to the attention of the trial court or otherwise fails to investigate the defendant's mental condition. Kibert v. Peyton, 383 F.2d 566 (4th Cir. 1966); Owsley v. Peyton, 368 F.2d 1002 (4th Cir. 1966); Caudill v. Peyton, 368 F.2d 563, 564–565 (4th Cir. 1966). This is not the case here. At the time Ashby entered his plea of guilty, he informed the trial court that he had no complaints to make about his attorney. Petitioner, after he had begun serving his sentence, requested the same attorney who had represented him at the trial to prepare a

---

5. Mrs. Ashby's comment was preceded by her testimony concerning an incident that occurred five years before and was made in response to the following question:

"Q. Now, is there anything else you want to say about him?

"A. I just don't think that Jerry knows right from wrong or wrong from right, whichever way you call it. He does these things and he don't realize he is doing them until it is done. Now, when he was a child I took him to a psychiatrist when he was going to school in Salem. We lived there, and he said—"

writ of error for him, and it was petitioner's court appointed attorney who first raised the ground of ineffective assistance of counsel. Ashby's statement to the court and his action in requesting the same attorney to prepare a writ of error tend to discredit the claim he now makes. Furthermore, the record clearly shows that petitioner's appointed counsel investigated the petitioner's mental condition, brought the matter to the court's attention, filed numerous motions seeking to have the petitioner examined, and produced evidence at hearings on those motions. The service rendered by petitioner's attorney far exceeded the standard by which allegations of incompetent assistance are measured in federal habeas corpus proceedings, for habeas corpus relief will only be granted where the petitioner can show that his attorney made a farce or mockery of his trial. *Snead,* supra, 273 F.2d at 842. In fact, the true construction of the petition would seem to be that petitioner does not here assert that his attorney rendered him incompetent service. Rather, it is his position that the trial court in denying his motions, prevented his counsel from rendering effective assistance. Thus, what has been said about the denial of the motions also disposes of the claims about ineffective assistance of counsel.

### Involuntary Guilty Plea

Finally, petitioner claims that his plea of guilty was involuntary because ". . . on being guestioned [sic] by the court, he was never asked if he had any objections to the actions of the court theretofore taken, and for other reasons appearing in the record." In a brief submitted in support of petitioner's writ of error in the Supreme Court of Virginia, the following argument was made concerning the allegations of involuntariness:

"Haste breeds waste and dissatisfaction. The speed at which the plaintiff in error was rushed to trial, without permitting appointed counsel time to prepare as thorough a defense as possible in this case, even though it was wasted effort, deprived the plaintiff in error of his right to counsel (from counsel and not the Court) and in so doing he was forced into a painful dilemma:

'either take it (the two, two-year sentences) or leave it,' and go to trial unprepared. Both counsel and plaintiff in error realized that the maximum punishment in this case could be twenty years or more in the penitentiary and, not being willing to be foolhardy under the pressure of the situation, entered a plea of guilty and accepted the two, two-year sentences."

This court is unaware of any requirement, constitutional or otherwise, making it incumbent upon a trial judge to ask the accused if he has any objection to the court's prior rulings.

 Plea bargaining, in and of itself, does not vitiate a guilty plea. Wilson v. North Carolina, 429 F.2d 622 (4th Cir. 1970). Ashby was informed of the maximum penalties he could have received and of his abolute right to plead not guilty and be tried by a jury. He was provided with the advice of competent counsel. And in view of this court's determination that there was no clear constitutional abuse of discretion on the part of the trial court in denying his motions for a continuance for a mental examination, it cannot be said that his choice of going to trial or entering a plea of guilty amounted to duress.

 The records which are before this court disclose all the pertinent factual matters necessary for the determination of petitioner's contentions. Thus, no further hearing is required. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The court particularly notes that the trial court, in the criminal case, did not act abruptly or peremptorily and afforded the petitioner a hearing on the question of his mental capability to plead and stand trial, at which time the petitioner was afforded the opportunity to offer evidence concerning his mental

condition. The evidence adduced at such hearing does not reveal that the action of the trial court in denying the motion of petitioner for a mental examination prior to trial was a clear constitutional abuse of discretion. The arbitrary aspects of the cases setting aside convictions under somewhat similar circumstances are lacking here. See Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Timmons*, supra; United States v. Kendrick, supra; *Thomas*, supra; *Kibert*, supra. No issue is before this court of petitioner's sanity at the time of conviction, or of waiver. See *Pate*, p. 378, 86 S.Ct. 836; Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (misc. opinion, 1956), reversing 96 U.S.App.D.C. 117, 223 F.2d 582 (1955).

This court expresses no opinion on the correctness of the trial judge's decision under state law.

The record shows no prejudice resulting from the trial court's overruling a motion for a continuance if the motion be considered in the context of lack of time to prepare rather than lack of a mental examination.