**James Thomas MOORE, Petitioner,**

v.

**A. T. ROBINSON, Superintendent, Powhatan Division of Corrections, Respondent.**

**Civ. A. No. 74–77.**

United States District Court, W. D. Virginia, Danville Division.

April 11, 1975.

Stuart Bateman, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

James Thomas Moore, petitioner, has filed a petition for habeas corpus with this court. Petitioner was convicted of armed robbery and sentenced to twenty (20) years at the Virginia State Penitentiary by the Danville Circuit Court on March 27, 1972. Petitioner is currently detained at the State Farm, Powhatan Division. Petitioner proffers two allegations: 1) ineffective assistance of counsel and 2) improper identification procedures. Petitioner was granted leave to file this *pro se* petition *in forma pauperis* by order of this court dated November 25, 1974, after the case had been transferred to this court from the United States District Court for the Eastern District of Virginia on November 21, 1974.

Respondent has filed a motion to dismiss in which respondent admits that petitioner has exhausted his state remedies as to the two allegations contained in petitioner's present action. Petitioner appealed his original conviction by way of direct appeal to the Supreme Court of Virginia; and this appeal was denied. On November 1, 1972, petitioner in a writ of habeas corpus before the Supreme Court of Virginia raised several issues including ineffective counsel and improper pre-trial identification procedures. The Supreme Court of Virginia directed a writ returnable to the Danville Circuit Court on these two issues. A hearing in the Danville Circuit Court was held on October 12, 1972, in which petitioner was represented by counsel. The Danville Circuit Court denied relief and the Supreme Court of Virginia affirmed this denial. Respon-

dent has also caused a copy of petitioner's trial to be forwarded to this court and the trial transcript is now before this court.

Petitioner first alleges that he was denied effective assistance of counsel at his trial. The transcript reveals otherwise and the court finds that petitioner's court appointed attorney put forth a vigorous defense. This court held in Ashby v. Cox, 344 F.Supp. 759 (W.D.Va.1972) that habeas corpus relief on the ground of ineffective assistance of counsel will only be granted where petitioner can show that his attorney made a farce or mockery of his trial. Since the trial transcript indicates that petitioner's trial provided a full and fair hearing and that his counsel put forth a thorough defense replete with a rigorous cross-examination and motions, this court finds that petitioner was afforded effective assistance of counsel.

Petitioner's second allegation concerns the use of photographs by the police in a pre-trial identification procedure. Specifically, the petitioner alleges that the police showed the key witness, Kay Orrell, photographs containing his picture which were so suggestive that her in-court identification was impermissibly prejudiced and created a substantial likelihood of misidentification. The leading case on the use of photographs in pre-trial identification procedures is Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In *Simmons* the United States Supreme Court, while recognizing the hazards of initial identification by photographs, was unwilling to prohibit its employment as a matter of constitutional requirement. The court went on to hold:

". . . that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Id. at 384, 88 S.Ct. at 971).

The court reasoned that a course of cross-examination at trial which exposes to the jury the photographic method's potential for error would normally be sufficient to lessen the possibility of misidentification.

██ In the present case the transcript reveals that Officer D. L. Dalton of the Danville Police Department showed approximately eleven (11) pictures to Kay Orrell, the pictures included one of petitioner. This photographic identification occurred fourteen days after the robbery for which petitioner was tried and convicted, and the identification took place after Officer Dalton had already obtained an arrest warrant for petitioner. (Tr. 23) After viewing the photographs Kay Orrell picked out a picture of petitioner and told Officer Dalton that she "was almost sure that that was the person" but would rather see the person in a corporeal identification. (Tr. 44) Furthermore, it is apparent that Kay Orrell was informed that a warrant had already been obtained for the arrest of a suspect and that a picture of the suspect was included in the eleven photographs which Kay Orrell was to be shown. (Tr. 24) Thus before Kay Orrell indicated that the picture of petitioner resembled the robber, the police had already obtained a warrant for the arrest of petitioner based on other information and this fact was related to Kay Orrell. This court cautions the Danville Police Department on the procedure used in this case as the photographic identification was certainly unnecessary, since the police had already obtained enough information to obtain an arrest warrant and certainly there was no exigent circumstance justifying this method of procedure. Furthermore such procedures when not justified by necessity should be avoided as there is always some danger that the witness may make an incorrect identification. However, the Supreme Court has set forth a test which has a weighty burden for petitioner to overcome if he is to establish that the use of a photographic line-up violated his constitutional right to a fair trial. Petitioner must show that a) the procedure was impermissibly suggestive and that b) this flaw created a very substantial likelihood of irreparable misidentification. After viewing the totality of the circumstances surrounding the photographic identification, this court is not persuaded that the procedure was impermissibly suggestive. While there certainly was an element of suggestiveness, the result did not reach the degree of an impermissibly prejudicial effect. Both the number of photographs and the relatively short period of time which transpired between the commission of the crime and the photographic identification militate against such a high degree of suggestiveness. Furthermore it is clear from the transcript that Kay Orrell had an excellent opportunity to view the robber. She was working behind the counter of the Chic-A-Sea restaurant when the robber jumped upon the counter and drew a gun on her and then proceeded to empty the cash register. (Tr. 9) Although the robber had a stocking mask on, Kay Orrell stated at trial that the stocking did not mask the robber at all and that his features were readily discernible. (Tr. 41) Moreover, she had more than a few minutes to view the robber, within two feet, and in a well-lighted room. (Tr. 17, 38) At trial Kay Orrell was absolutely positive in her identification of petitioner as the man who had committed the robbery. (Tr. 13) The possibility of misidentification therefore was small and did not approach the standard of a substantial likelihood.

██ One further point remains to be examined. The transcript reveals that subsequent to the photographic identification and prior to trial, Kay Orrell viewed petitioner at the Municipal Court in Danville and positively identified him. (Tr. 14) Petitioner was brought in for an appearance before the district judge at a preliminary hearing at which Kay Orrell was present and petitioner was led in by a policeman. (Tr. 15) Kay Orrell was aware that petitioner was about to be brought there. Once again this court must consider

whether this concededly suggestive procedure made Kay Orrell's in-court identification unreliable. The Supreme Court announced in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the following criteria which must be evaluated in determining whether under the totality of the circumstances the identification is reliable notwithstanding a suggestive confrontation:

1) the opportunity of the witness to view the criminal at the time of the crime;

2) the witness' degree of attention;

3) the accuracy of the witness' prior description of the criminal;

4) the level of certainty demonstrated by the witness at the confrontation; and

5) the length of time between the crime and the confrontation.

In the present case the witness had over a few minutes to view the criminal (Tr. 38), in close proximity (Tr. 38), and in a well-lighted room (Tr. 17). The witness' attention was undiverted from the criminal (Tr. 38–39) and her initial description was accurate (Tr. 11, 12). The witness was absolutely certain that the petitioner was the robber when she saw him at the confrontation (Tr. 42) and only three weeks had transpired between the confrontation and the crime. (The crime occurred on February 22, 1971, and the confrontation occurred on March 16, 1971, at the Municipal Court in Danville.) After applying the "totality of the circumstances" this court concludes that Kay Orrell's in-court identification of petitioner was reliable.

For the above reasons the court denies petitioner's request for habeas corpus relief and orders that his petition be dismissed and stricken from the docket. Petitioner is advised that he may appeal the judgment of this court by filing within thirty (30) days a notice of appeal with this court.

The clerk is directed to send a certified copy of this opinion and judgment to petitioner and to counsel for respondent.